**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-01869-REB

JALEH KAVEH AHANGARI,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY DECISION
AND DIRECTING AWARD OF BENEFITS**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed September 6, 2007, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of depression and post-traumatic stress disorder. She originally filed an application for supplemental security income benefits in January, 2001, which was denied at the administrative level. Plaintiff appealed that decision to the district court, which reversed and remanded for a new hearing. During the pendency of that appeal, plaintiff filed a second application of social

security income benefits. After the district court remanded the case, the two applications were combined for a single hearing before an administrative law judge. A hearing was held on February 27, 2006. At the time of this hearing, plaintiff was 32 years old. Plaintiff was born in Iran and educated there and in India, and It is not clear what level of education she ultimately received.[1] She has no relevant past work experience and has not engaged in substantial gainful activity at any time.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance and supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of such impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity for routine, unskilled work involving the ability to understand, remember, and carry out simple instructions, occasional interaction with coworkers and supervisors, and no interaction with the public. He found that there were jobs existing in significant numbers in the national economy that she could perform. The ALJ therefore found plaintiff not disabled both at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his

---

[1] Although plaintiff reported that she received a "bachelor's in mathematics" from a school in India in 1989 (Tr. 64), she was only 16 or 17 years old at the time she received this degree, as she testified at the second hearing (Tr. 905).

physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

> 5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. **Id.**

### III. LEGAL ANALYSIS

Plaintiff presents several grounds of error in this appeal. Because I find that the ALJ erred in not affording controlling weight to the opinion of plaintiff's treating psychiatrist, which supports the conclusion that plaintiff meets the requirements of the listing of impairments and therefore is disabled, I do not address the remaining arguments.

As a teenager in her native Iran, plaintiff was twice picked up on the street, taken to jail, and tortured for failing to wear a *hijab* and for wearing makeup in public. As a result of this abuse, plaintiff is socially and emotionally isolated and withdrawn, hyper-vigilant and paranoid, and suffers from panic attacks, among other severe symptoms. (Tr. 610-611.) She has been a patient at the Mental Health Center of Denver ("MHCD") since 2001, and has been diagnosed with major depressive disorder with severe psychotic features and post-traumatic stress disorder. (Tr. 610.) Her treating psychiatrist, Dr. John Menninger, asserts that she has a Global Assessment of Functioning ("GAF") of 45,[2] is unable to perform the major mental demands of work

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" **Langley v. Barnhart**, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, **Diagnostic and Statistical Manual of Mental Disorders** at 32 (Text Revision 4th ed. 2000) ("DSM-IV")). A GAF of 45 "indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." **Eden v. Barnhart**, 2004 WL

5

consistently, and has marked and/or extreme functional limitations. (Tr. 610, 612-613.) Dr. Menninger elaborated further on these opinions in a narrative letter, noting that plaintiff "continues to suffer from both intrusive memories of her torture and nightmares" and "suffers intense psychological distress at exposure to internal and external cues that symbolize her resemble some aspect of the traumatic event," and suffers auditory hallucinations. As a result, plaintiff "isolates at home and rarely goes out, except at times when encouraged by her sister," "is fearful of public places and being around strangers," and experiences "outbursts of irritability, poor concentrating, hypervigilance and paranoia of her surroundings, and an exaggerated startle response." Dr. Menninger explained that plaintiff's mental impairments prevented competitive employment, since her "marked levels of paranoia of those around her, ranging from strangers to people in positions of authority, interfere with an ability for regular attendance," and "impairs her ability to maintain her attention, perform simple tasks throughout the day, and receive instructions from others." (Tr. 617-618.)

The ALJ acknowledged that Dr. Menninger's opinion, if accepted, would mandate a finding that plaintiff is presumptively disabled under listings 12.04, which describes affective disorders, and 12.06, which deals with anxiety disorders. *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1, §§ 12.04 & 12.06. Under section 12.00 of the listings, which describes various mental disorders, each of the nine diagnostic categories identified

---

2051382 at *2 (10th Cir. Sept. 15, 2004) (quoting **DSM-IV** at 34). Although a low GAF score does not mandate a finding of disability, *see Cox v. Apfel*, 2000 WL 1472729 at * (D. Kan. Feb. 24, 2000), it is highly probative when coupled with a more detailed description of how the rating affects a claimant's ability to work, *see Eden*, 2004 WL 2051382 at *2; ***Seymore v. Apfel***, 1997 WL 755386 at *2 (10th Cir. Dec. 8, 1997).

6

therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria). Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders. A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied. *Id.*, § 12.00A. Although the ALJ conceded that plaintiff met the paragraph A criteria for both affective and anxiety disorders, he rejected Dr. Menninger's opinion that plaintiff also satisfied the paragraph B criteria.[3] (Tr. 359-360.) In so doing, the ALJ erred.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[4] In

---

[3] Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Pt. 404, Subpt. P., app. 1, §§ 12.04B & 12.06B.

[4] These factors include:

7

either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987).

The ALJ discounted Dr. Menninger's opinions regarding the paragraph B criteria on the ground that they were inconsistent with his treatment notes. (Tr. 359.) As his sole example, he noted that Dr. Menninger found plaintiff suffered "marked" limitation in concentration, persistence, and pace despite the fact that she scored a 30 out of 30 of a "mini mental status evaluation." (Tr. 359, 212.) This single instance of apparent mental stability, which occurred more than four years prior to the ALJ's decision, ignores the important, longitudinal context of plaintiff's mental impairments.[5] As Dr. Menninger noted in a letter to the Appeals Council (Tr. 345-346), and as the Commissioner's own regulations explicitly recognize, the level of functioning for a claimant who suffers from mental impairments "may vary considerably over time." 20 C.F.R. Pt. 404, Subpt. P,

---

|   |   |
|---|---|
| 1. | the physician's length of treatment of the claimant; |
| 2. | the physician's frequency of examination; |
| 3. | the nature and extent of the treatment relationship; |
| 4. | the support of the physician's opinion afforded by the medical evidence of record; |
| 5. | the consistency of the opinion with the record as a whole; and |
| 6. | the specialization of the treating physician. |

20 C.F.R. § 416.927(d)(2).

[5] The ALJ also noted that Drs. Cucich and McGovern found plaintiff "was fully oriented, had normal concentration and intact immediate and short term memory" during the consultative examinations they each performed. (Tr. 360.) This conclusion completely ignores Dr. Cucich's ultimate finding that plaintiff's "concentration and cognitive abilities appear to be moderately limited during this interview" (Tr. 543), as well as Dr. McGovern's observation that plaintiff "was easily confused by long questions" (Tr. 178), and his conclusion that her "daily activities, abilities and social activities have all been severely impacted by her psychiatric problems, which have caused her to isolate . . ." (Tr. 179). Such out-of-context references do not substantiate good cause to reject a treating source opinion.

app. 1, § 12.00D(2). In fact, the copious medical record from MHCD fully supports the notion that plaintiff's symptoms waxed and waned over time. The ALJ's failure to acknowledge the cyclical pattern of plaintiff's symptoms smacks of "cherry picking" the record, which is improper. ***See Robinson v. Barnhart***, 366 F.3d 1078, 1083 (10th Cir. 2004).

The ALJ further discounted Dr. Menninger's opinion that plaintiff suffers extreme difficulties in maintaining social functioning. (Tr. 360, 613.) The evidence cited by the ALJ in support of this conclusion consists of treatment notes showing that plaintiff was planning to spend the weekend with her sister (Tr. 688), attended an appointment with her sister (Tr. 737)[6], expressed the desire get a job and further her education (Tr. 775), and talked with her case manager in some unspecified way about school (Tr. 785).[7] Plaintiff's ability to interact with an immediate family member essentially says nothing about her capacity to interact with supervisors, co-workers, or the public. 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00F ("Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychological factors such as placement in . . . highly structured and supportive settings [such as] may . . . be found in your home."). The references to plaintiff's schooling are so vague and generalized as to say nothing probative about how plaintiff interacts with others at

---

[6] At which appointment, plaintiff's sister expressed her desire that plaintiff "make some friends and be less scared." (Tr. 737.)

[7] A fifth citation, to Exhibit 11F at page 5, references notes from a doctor's visit for various physical ailments, such as cholesterol and cold sores. It was noted, in passing, that plaintiff suffered from PTSD, which was "well controlled." (Tr. 799.) It is unclear how this evidence in any way supports the ALJ's conclusion that plaintiff "is generally stable and exhibits good social skills and interaction in group activities." (Tr. 360.)

school, if indeed she does at all.

In addition, the ALJ relied heavily on plaintiff's intermittent involvement for two months in 2005 in a "bagel and coffee" group with other MHCD patients. (Tr. 360, 629, 632, 640, 648, 663.)[8] As explained by Dr. Menninger, however, this group imposes "minimal social demands" on participants. (Tr. 346.) *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (noting that activities of daily living do not always translate well into a determination of what the claimant can do on a sustained basis in the workplace); *see also Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (same). More importantly, the Commissioner's has specifically recognized that activities a claimant is able to perform only in a highly structured and supportive environment are not particularly compelling evidence of the ability to sustain employment. *See* 20 C.F.R., Pt. 404, Subpt. P, app. 1, § 12.00F.

Lastly, the ALJ noted that plaintiff had, prior to the date of Dr. Menninger's evaluation, had met with her case manager to go over the form that Dr. Menninger ultimately completed. (Tr. 360, 823.) From this the ALJ concluded that "at least some of Dr. Menninger's assessments are not the product of his independent medical opinion based on clinical signs and findings but on the claimant's own subjective complaints." (Tr. 360.) This gargantuan leap in logic was completely unwarranted. The fact that plaintiff's *case manager* discussed this form with *her* does nothing to impugn Dr. Menninger's integrity. Moreover, the evidence suggests nothing more than that the

---

[8] The ALJ also relied on two other isolated record references to group therapy sessions in which plaintiff participated that a New Year's celebration (Tr. 754), and a "bingo group" (Tr. 755). Since both of these "socializing" opportunities occurred within the context of plaintiff's regular group therapy sessions, the same analysis applies.

10

case manager "explained the words that were unfamiliar to [plaintiff] and the reasons why certain questions were being asked." (Tr. 823.) Affording plaintiff some prior familiarity with the nature of the upcoming examination in no way suggests that Dr. Menninger himself was biased in his assessments.

In sum, I find that the ALJ did not articulate good cause specifically tied to the evidence of record for the weight he gave, or failed to give, to Dr. Menninger's opinion. The evidence on which the ALJ relied in finding to the contrary does not provide substantial evidence for the Commissioner's disability decision.

Plaintiff asks the court to forgo remand and direct the Commissioner to award her benefits. I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). The ALJ conceded that plaintiff met the criteria of paragraph A. Dr. Menninger's opinion supports the conclusion that plaintiff meets the severity requirements of at least two of the four paragraph B criteria, as required to find her mental impairments presumptively disabling under either section 12.04 or section 12.06 of the listing of impairments. The ALJ did not give adequate reasons to reject that opinion, and it therefore was entitled to controlling weight. Under these circumstances, a remand would only serve to further delay an award of benefits to which plaintiff clearly is entitled.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2.  That **JUDGMENT SHALL ENTER** in favor of plaintiff and against the Commissioner;

3.  That the Commissioner is **DIRECTED** to award plaintiff benefits as of the alleged date of onset of her disability; and

4. That plaintiff is **AWARDED** her costs to be taxed by the Clerk of the Court pursuant to **FED.R.CIV.P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated September 8, 2008, at Denver, Colorado.

            **BY THE COURT:**

            <u>s/ Robert E. Blackburn</u>
            **Robert E. Blackburn**
            **United States District Judge**